NATE L. SUNLEY, Appellee, v. THE METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

**Libel:** INCOMPETENT EVIDENCE. In an action for libel based on a charge that plaintiff was short in his accounts with defendant, the correspondence between defendant and plaintiff's bondsmen, to which plaintiff was not a party, is not competent to contradict his evidence of the condition of the accounts.

**Libel:** PRIVILEGED STATEMENTS: DEFENSE: EVIDENCE. The statements of an employer made to the surety of an employe concerning his defalcation are not absolutely privileged, and when maliciously made are not available as a defense to an action for libel. Evidence held sufficient to warrant the inference of malice.

**Libel:** PROXIMATE CAUSE OF DAMAGE. An employer's false report that an employé was short in his accounts, which caused the surety on his bond to a subsequent employer to withdraw, is held to have been the proximate cause of the loss of the new position.

**Special damages.** Where the claim of privilege is lost by a finding of malice, the plaintiff is not required to prove special damage.

**Libel per se.** The statement that an employé is short in his accounts charges him with a criminal act; but if this were not so it imputes dishonesty and unfaithfulness and is actionable *per se,* for which there may be a recovery unless the plea of privilege has been sustained.

*Appeal from Wapello District Court.*— HON. M. A. ROB-
ERTS, Judge.

THURSDAY, OCTOBER 25, 1906.

THE opinion states the facts. *Affirmed.*

*E. H. McVey* and *Gilmore & Moon,* for appellant.

*Work & Work,* for appellee.

WEAVER, J.— The plaintiff seeks to recover damages for an alleged libel. The petition avers that plaintiff was employed by defendant as a solicitor and collector, and, for the faithful performance of his duties in that capacity, gave the defendant a bond with the National Surety Company as surety. He further avers that, after the giving of said bond, the defendant wrongfully and maliciously wrote a letter, and sent the same to said surety company, falsely charging the plaintiff with being a defaulter, and with hav-

ing embezzled certain moneys collected by him on said defendant's account. By way of special damages, he also alleges that, after leaving the defendant's service, he obtained other employment with a certain school at Scranton, Pa., which employment he says was lost by him by reason of the publication of the false charge by the defendant aforesaid. The defendant denies all wrong and malice on its part and claims that its communication to the surety company was of a privileged character, and made in good faith. Upon these issues, there was a verdict and judgment for plaintiff in the sum of $400 and defendant appeals.

The evidence tends to show that one Murdock, an assistant superintendent of the defendant at Ottumwa, had some sort of accounting with the plaintiff, and reported to the home office that plaintiff was short in the collections made to the amount of $14.31. Thereafter the defendant wrote to the surety company, stating that plaintiff was short in his accounts to the amount of $21.81. Meanwhile plaintiff had obtained, or was promised, employment, with the correspondence school at Scranton, and applied to the National Surety Company to become surety on his bond in that service. The surety company declined the risk because of the information it had received from the defendant, and also wrote to the correspondence school, giving the reasons for its action, and, thereupon, the latter declined to take or retain plaintiff in its employment. A few days later the defendant wrote to the surety company, referring to the claim it had made upon the plaintiff's bond, and saying:

The final inspection of this ex-agent's account was made for the week of July 21st, and our assistant superintendent reported a deficiency of $11.76. An examination of the final papers at this end increased the shortage to $14.31. Under date of August 4th, which was prior to the time of making claim, we received a remittance of $8.45, which, owing to an oversight, was not placed to the credit of his account at that time. Under the circumstances you will observe that we were not justified in submitting the

claim under this agent's bond. In addition to the remittance mentioned above, we have more than sufficient ordinary salary in hand to liquidate the balance of the shortage; therefore we take pleasure in withdrawing our claim.

About the same time the defendant wrote to the plaintiff as follows:

Mr. Nate Sunley, Ottumwa, Iowa — Dear Sir: In response to your letter of above date we have this to say. It was an error on the company's part in making claim on the surety company. While the corrected final inspection revealed an actual deficiency of $14.31, the company had received $8.45 from Asst. J. Murdock before making claim and there was sufficient salary in hand due you to offset the balance. The National Surety Company has been advised of this fact, and our company has withdrawn claim. Very truly yours, G. R. Creighton, Supt.

The plaintiff testifies that, on making settlement with Murdock for the company, there was found to be in his hands after all proper credits were allowed the sum of $8.20,
1. Libel: incompetent evidence.
which sum he paid over to Murdock. Mr. Murdock was not examined as a witness, and there is no evidence whatever that there was any shortage in plaintiff's accounts, at the date charged by the defendant, except as that conclusion may be argued by counsel from plaintiff's own testimony. The statements made in the correspondence between defendant and the surety company to which plaintiff was in no manner a party are not competent evidence against him upon this proposition. Under the record as made, the jury was justified in finding that the charge was reckless and ill advised, and without justification in the facts.

. But it is urged that the communication was of a privileged character, rebutting the presumption of malice. The privilege in such cases is not absolute, but qualified, and will not avail as a defense where actual malice is shown. Whether such malice has been established is ordinarily a

jury question.   It may be conceded that defendant, in the
2. LIBEL: privi-   protection of its own interests, had the right
leged state-
ments: de-      to report to the surety company any apparent
fense: evi-
dence.          defalcation or breach of trust on part of the
agent, and, if the report was made in good faith, and without
malice, the communication was privileged, even though it
might be found on further investigation that the charge was
erroneous.   It may also be conceded that the law indulges
a presumption in favor of the good faith of the defendant;
and, in the absence of evidence to the contrary, the plain-
tiff cannot recover damages.   But the existence of malice
is a conclusion which may be drawn from the face of the
alleged libel itself, and from the facts and circumstances
which surround and characterize it.   If, as a matter of fact,
the plaintiff upon being called upon by the assistant super-
intendent made proper accounting, and paid over the bal-
ance in his hands, then such superintendent's knowledge of
the fact was the defendant's knowledge, and its charge to
the surety company against the plaintiff's integrity was with-
out justification.   Moreover, the fact that, notwithstanding
the superintendent's report to the company stated the alleged
shortage to be $14.31, the charge sent by it to the surety
company increased the claim to $21.81, and the further fact
that thereafter, in withdrawing the claim, the defendant
conceded that at the time the charge was made it had re-
ceived a remittance of $8.45 from the plaintiff, and had in
its hands " more than sufficient " of his salary to satisfy
its demand, were matters from which the jury might well
infer the malice which is necessary to make such an accusa-
tion libelous.   *Nichols v. Eaton,* 110 Iowa, 513; *White v.
Nicholls,* 3 How (U. S.) 266 (11 L. Ed. 591); *Wright v.
Woodgate,* 2 Cramp. M. & R. 573; *Morse v. Printing Co.,*
124 Iowa, 707; *Prewitt v. Wilson,* 128 Iowa, 198; *Duncan
v. Brown,* 15 B. Mon. (Ky.) 186; *Conroy v. Times,* 139 Pa.
334 (21 Atl. 154, 11 L. R. A. 725, 23 Am. St. Rep. 188);
*Hastings v. Lusk,* 22 Wend. (N. Y.) 410 (34 Am. Dec.

330) ; *Nevill v. Ins. Co.,* 2 Q. B. 156; *Railroad Co. v. Beehe,* 2 Tex. Civ. App. 107 (21 S. W. 384).

It is urged finally that the act of plaintiff's subsequent employer, in refusing to continue him in its service, was not the natural and proximate result of the alleged libel, and that there is no evidence of damage to sup-

**3. Libel: proximate cause of damage.** port the verdict. As to the first proposition, we are of the opinion that the jury was justified in finding that the severance of the relations between plaintiff and the correspondence school was the immediate result of the charge made by the defendant to the surety company. The defendant was the author of the charge which led the surety company to withdraw from the bond to the correspondence school, and thus to deprive the plaintiff of his position.

It should also be remembered that when the claim of privilege is lost by the finding of malice, the plaintiff is not required to prove any special damage. In such case the

**4. Special damage.** law presumes that he has been injured in his good name and reputation, and the jury may award him damages in such reasonable sum as the circumstances shall justify, though no evidence whatever be offered on that subject. *Morse v. Printing Co.,* 124 Iowa, 725.

It is said by counsel that the charge made by the defendant did not involve an accusation of crime. Without taking time to set out the precise language of the several communications we are of the opinion that

**5. Libel per se.** the defendant was charged with a criminal act; but even if this be a misinterpretation of the meaning, it cannot well be denied that the charge did impute to the plaintiff dishonesty and unfaithfulness to his employer, and this is libelous *per se,* and entitles the plaintiff to recover if the plea of privilege has been overcome by sufficient proof of malice. See Morse v. Printing Co., *supra,* and authorities there cited.

The rules of law governing this class of cases are quite

well settled, and the controversy before us was one of fact, upon which the plaintiff was entitled to go to the jury. The issue seems to have been fairly submitted, and the verdict must stand.

The judgment of the district court is *affirmed.*