HELEN BARRY *vs.* EDWARD D. McCOLLOM.

First Judicial District, Hartford, October Term, 1908.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Statements made by a district superintendent of schools in his official report to the board of school visitors, concerning the efficiency and qualifications of the teachers employed in the district, are privileged communications.

It is not essential, in order to invoke the protection of a privileged communication, that the defendant should have had what might seem to the jury to be "good reasons" or "reasonable grounds" for believing the statements made by him were true: it is enough if he honestly believed them to be true and made them in good faith in a conscientious desire to discharge the duties of his office. Nor is it necessary to such privilege that the defendant should prove that statements made by him which were inevitably detrimental to the plaintiff as a school teacher, were published with no intention or purpose on his part to "injure" her.

The word "injury," as generally used, includes any act or omission which harms or damages another, whether justified by law or not.

There is no presumption that statements, made in an official report which is in the nature of a privileged communication, are either false or malicious.

Declarations indicative of an existing feeling or state of mind respecting an act about to be done by the declarant, if made naturally and under circumstances devoid of suspicion, are admissible, not as part of the res gestæ, but as relevant evidence of the existence of the fact as to which they speak.

The fact that one expressed regret or sorrow for an official report which he was about to make, is not only evidence of the existence of that feeling at that time, but also tends to show that the same feeling attended the filing of his report a few days later.

The question of whether evidence is or is not too remote in point of time, to be entitled to admission, is one which addresses itself to the sound discretion of the trial judge.

That evidence is legally admissible does not in all cases necessarily require its admission.

One of the alleged libelous statements in the present case was that the plaintiff had not "even the externals of refinement." *Held* that an instruction which was calculated to focus the attention of the jury upon the plaintiff's appearance on the witness-stand as affording them the best evidence of determining whether, several months before, she possessed "the externals of refinement," was erroneous and misleading.

Argued October 7th—decided October 29th, 1908.

ACTION for libel, brought to the Superior Court in Hartford County and tried to the jury before *Shumway, J.;* verdict and judgment for plaintiff. *Error, and new trial ordered.*

*Charles E. Perkins* and *Herbert O. Bowers*, for the appellant (defendant).

*Benedict M. Holden*, with whom was *Hugh M. Alcorn*, for the appellee (plaintiff).

BALDWIN, C. J. In May, 1907, the plaintiff was the teacher of a public district school in the town of South Windsor, and the defendant was the superintendent of all

the public schools in that and another town. One of his duties was to report to the board of school visitors in each town in regard to the efficiency and qualification of the teachers employed in the different schools. He made a written report to the secretary of the South Windsor board, in which are statements concerning the plaintiff which were libelous, unless protected as a privileged communication. She brought this action, alleging a publication of these statements and that they were false and malicious. His answer denied that they were false and malicious, set up the official relations of the parties and his consequent privilege, and also averred the truth of everything contained in the report.

In the charge to the jury the trial court, after stating that the defendant could claim the benefit of protection for whatever was contained in the report by a. conditional or qualified privilege, and that the controlling question for them to decide was whether he published it in good faith, without any improper or unjustifiable motive, proceeded thus:—

"The defendant is not obliged to prove the words were in fact true, but he must prove that he believed them to be true, and had reason to believe them to be true, and that they were published in good faith, and with no intention and purpose on his part of injuring the plaintiff, but with an intention of performing his duty in reporting to the school board of South Windsor what he believed to be true, and had good reason for believing to be true. . . .

"In order to find in favor of the plaintiff in this case, you must find from the evidence the existence of some improper and unjustifiable motive on the part of the defendant when he made the report in question. The defendant may have arrived at conclusions without sufficient evidence, but the privilege protects him from liability in this suit on that ground, until the plaintiff has overcome the presumption of good faith by proof of malice in fact,

as she assumes the burden of proof of the existence of malice by other proof than the presumption which arises from the mere publication of the defamatory matter. . . .

"Now, in determining his good faith, you must ask yourselves upon what evidence did he make these statements. He is relieved, by reason of the position which he occupied, from the ordinary duty of a person who makes slanderous or libelous statements to prove their exact truth. He is entitled to be relieved from liability if he honestly believed them to be true, and made them in good faith. . . .

"If the facts stated in the report, or any of them, imputing unfitness to teach on the part of the plaintiff, Miss Helen Barry, are not true, and the defendant knew they were not true, then the conclusion that he acted in bad faith is almost irresistible. But if the defendant did not know the statements in the report were untrue, then you should ask yourself the question whether he had reasonable grounds for believing them to be true, and if you find that he did you would be justified in finding a verdict in his favor. But if you find that he had not reasonable grounds for believing his statements to be true, you would be justified in finding a verdict in favor of the plaintiff."

The jury were thus correctly instructed at one point in the charge, that the defendant was protected by his privilege if he honestly believed his statements to be true and made them in good faith, and incorrectly instructed at other points that he must have had "good reason," or "reasonable grounds," for believing them to be true, and also was bound to prove that he published them with no intention and purpose of injuring the plaintiff.

The necessary and inevitable effect of such a report was to injure the plaintiff. It charged her with faults so serious that those charged with the duty of employing her or re-employing her as a teacher, if they gave credit to

them, would naturally discharge or decline to re-engage her. The jury could not fail to find that the defendant must have known this, and therefore that he intended to injure her, for the word "injury," as generally used, includes any act or omission which harms or damages another, whether it be or be not justified by law.

Nor was it necessary for the defendant's justification that he should have had what might seem to the jury good reason or reasonable grounds for the injurious statements contained in his report. It was enough if he honestly and in good faith, at the time when he made them, believed them to be true. This required nothing more than that there were grounds for such a belief which then seemed to him reasonable and sufficient, and that his motive in making the publication was an honest desire to discharge the duties of his office with fidelity. *Haight* v. *Cornell*, 15 Conn. 74, 82.

The charge was also erroneous in respect to the burden of proof. The foundation of the plaintiff's case was that the statements of which she complained were false and malicious. Her averment that they were such having been traversed, although their truth had been specially pleaded, when, in the course of the trial, it became an admitted fact that the defendant made them in an official report, which in its nature was a privileged communication, she could rely on no presumption either of falsity or malice. *Atwater* v. *Morning News Co.*, 67 Conn. 504, 519, 34 Atl. 865.

With respect to this particular point, the trial court charged the jury that "if the defendant believed and had good reason to believe that the plaintiff was guilty of the matters of which she is accused in the report, and he was actuated by no improper or unjustifiable motive in publishing them, it was his duty to communicate the fact to the board of school visitors, all of whom had a corresponding duty with respect to everything that concerned the

welfare of the South Windsor schools, and his statements, under such circumstances, were conditionally privileged until the plaintiff removes the privilege by proof on her part of actual, or, as it is sometimes called, express malice, or malice in fact." This was erroneous, for the reasons already stated, in assuming that the privilege relied on might depend on the defendant's having good reason to believe his charges against the plaintiff to be true.

One of these was that she was "at fault in her management of the sanitary conditions of the school—conditions which she could adequately deal with, if she wished." A witness offered in defense testified that a week or two before the report was sent in she met the defendant at the schoolhouse and remarked to him that it appeared to have been unswept for a month and was in a filthy condition, to which he replied that it was in a deplorable condition and he had a report to make, which he should be sorry to send in. It appears by the evidence in the cause, which has been certified to this court at length, that the witness resided in South Windsor and was the wife of one who filled the office of chairman of the board of school visitors of that town, at the time of the conversation in question. It was in answer to her complaint of the unsanitary condition of the school that the defendant admitted the fact, and said substantially that he was sorry to have to report it. This expression of his feeling with reference to the paper which it was his duty to prepare was in reply to a criticism of the administration of school affairs, made by one who had a right to complain and to ask him for an explanation. Proof that he had this feeling when he afterward sent the paper in would have gone directly to defeat the plaintiff's case. To show that he then had it, proof that he had it a few days previously, at the time of his conversation with the witness, was certainly not irrelevant. For such proof resort could properly be had to his declarations as to his then existing feelings in relation to the

subject of inquiry; provided such declarations were made
in a natural manner, and not under circumstances leading
to a suspicion that he was thus seeking to manufacture
evidence in his own favor, for use, if needed, in some an-
ticipated controversy. 3 Wigm. on Ev. §§ 1714, 1725.

They would be admissible, not as part of the *res gestæ*,
for they were not explanatory of any accompanying act;
but because in their nature, if true, they were the best
evidence of the existence of the fact as to which they speak.

Whether declarations of this kind, if admitted, are in
fact true, is a proper question for the jury; and the danger
to be anticipated from letting them be proved is far less
than that from admitting the testimony of him who made
them, given long afterward, under the pressure of a strong
interest.

The evidence now in question was of a declaration of a
public officer, accompanying an announcement, to one en-
titled to inquire into his official conduct, of his purpose
to do a certain official act, and characterizing that purpose.
As such, it had a legitimate tendency to explain the nature
of the act, soon afterward done, as being one prompted
by duty and not by malice. But whether this tendency
was of sufficient moment to call for the admission of the
testimony, or whether remoteness in point of time so
weakened its force as to make it not worth while to permit
its introduction, was a matter addressing itself to the
sound discretion of the trial judge. *State* v. *Kelly,* 77 Conn.
266, 269, 58 Atl. 705. It was within his power either to
receive or exclude it, as he might think would best pro-
mote justice in view of all the circumstances attending
the trial. Error in its exclusion, therefore, is not well
assigned. That evidence is legally admissible does not in
all cases necessarily require its admission.

One of the statements in the report was that the plaintiff
had not "even the externals of refinement." The court,
after instructing the jury in reference to another of its

statements, that they must look carefully at the character and interest of the witnesses who had testified regarding its truth or falsity, proceeded as follows: "The possession . . . of the externals of refinement is rather a subject of your own observation, because you know by seeing a person whether they have or not the externals of refinement."

The plaintiff had taken the stand in her own behalf. Her appearance there was, of course, to be taken into account by the jury in determining whether, nine months before, she had possessed "the externals of refinement"; but it is evident that it might not in all respects be the best evidence. The jury might well have understood from the language used, and its collocation, that it was the best. The exception to the charge upon this point is therefore sustained.

There are other reasons of appeal, but they relate to points not likely to recur upon a new trial and require no discussion.

There is error and a new trial is ordered.

In this opinion the other judges concurred.